20-1386 United States v. Garcia May it please the court, Bishop Grewell on behalf of the United States, I will attempt to reserve two minutes of rebuttal time. The United States delayed its prosecution in this case to allow a fellow sovereign to the federal gun charge in this case, then moved to writ the defendant over from state custody one day before his state sensing was scheduled, so that it was then able to actually bring him over from state custody a few days after that. That approach is consistent with the principles of comedy and with respect for another sovereign that are inherent in this court's precedence. We don't, I mean, we don't always say that waiting for the state to prosecute is a justifiable excuse for purposes of the speedy trial requirement, do we? No, what you do is you look at that as a possible reason for a government victory on the second factor, the Barker factors. And to make that analysis, you look at basically three sub factors, any of which, if they're present, that's sufficient to consider it a just justification to delay for the state proceedings. And here we certainly met the very first sub factor, the overlap on the charges. This is the one clear error point that I think we're really pressing on appeal that the district court clearly aired when she found that there was no overlap between the federal charges and state charges. She said that the state charges just went to the July 5th charges just went to the July 3rd shooting at the Kmart. That's clearly wrong from the indictment. We have a federal gun charge that charged a continuing offense that went from July 3rd through July 5th. So if there had been, for instance, identity concerns about whether he was the person doing the shooting at the Kmart, we still could have proceeded on that federal gun charge based entirely on the events of July 5th, which underlie all of the charges in the state case. And so there was substantial overlap here. And the reason that there may be overlap, I'm not sure if I'd say there's substantial overlap. I mean, there is some overlap. In Medina, this court said there was overlap because it was federal gun charges and state gun charges. That was enough there. And we've got much more than that here. It's all the evidence underlying the federal gun charge. All of the state charge would be in that particular case. And we've made particularized reasons why that was a concern. That overlap was a concern. We explained below that he may have inconsistent positions in the state court and the federal court. And by basically delaying, we were helping him to not actually have those conflicting positions or to see if they would occur. For instance, he could have said in the state court, yeah, on the third, he could have tried to introduce evidence that on the third, he did fire into the ground to show that two days later when he was firing, he wasn't actually trying to kill the police. He wasn't attempting murder after deliberation, which was in conflict with what he wanted to say in the federal court, which was that he hadn't fired the gun at all. Now, did that happen? No, because he eventually pled to assault charges. But until he pled guilty in June, just a couple months before we brought him over, there was no way for us to know that. And so that was certainly a reason to justify delaying for the state proceedings here. We also think that there was the inherent complexity that this court recognized in Nixon as a reason. We have attempted murder charges here. The elements of those are just as complicated as a murder charge. And that also justified us delaying and therefore winning Barker Factor 2. Counsel, it's not uncommon, is it, that in cases that are really assault cases, that they're charged as attempted murder cases. That's not uncommon, correct? Uh, I suppose if you had something that looked like it could be an attempted murder, that wouldn't be uncommon. Yeah. Here he was firing it at the police. I understand. My question is, is it uncommon that true assault cases are originally charged as attempted murder cases? I don't know how common it is, Your Honor. I would say it's not rare that you would have that. I mean, if you hit somebody, it's probably going to be an assault without attempted murder, probably. Let me ask you this. Now, you didn't have any hearings on this, so everything was submitted on paper, correct? Correct. What evidence was there before the district court as to the complexity of the state case? Uh, there were just the allegations about, you know, it being an attempted murder case and that that would be inherently complex. Well, was the state charged in an indictment or an information or a criminal complaint? I believe it was a complaint. It's in the record attached to, I believe, the defendant's reply brief in this matter. All right. And that complaint was before evidence the district court had? The district court had that, yes. Did the district court have the plea agreement? I don't believe that. I can't remember if the plea agreement is in the record or not. Would it be fair to say that the only thing that the court had as factual evidence regarding the complexity was the complaint filed in the state court? I think that's fair to say. All right. Thank you. And I believe because this is, we're talking about legal complexity here, it would really be an elements more like a categorical approach as opposed to factual complexity. We're not arguing sort of the factual complexity. We're just arguing the inherent legal complexity of attempted murder charges. But even if we didn't win on the complexity point, the fact that we had this overlap with potential conflict on its own is enough as a reason to delay here, given that we would be merely speculating about how he's going to defend his trial in state court. Is there a state weapons charge in that complaint? There is. There is a state weapons charge, yes. All right. But he pled instead to a lesser included the attempted murder assault and all other counts were dismissed? He just pled to the assault and all the other charges. I suppose it's possible we might have dismissed the federal gun charge here against something we wouldn't know until he actually pled guilty. Regardless of whether we were to win on factor two, it's appropriate for this court to find that no hold that no speedy trial violation occurred here and reinstate the indictment on the prejudice prong alone. Prejudice factor alone. This court has recognized that if a defendant fails to meet their burden of showing prejudice, that effectively eviscerates the claim. And we're pressing two legal arguments on this. The first is that the district court legally erred by effectively excising the causation requirement from showing prejudice based on speedy trial delay. And the second is a legal error where she concluded that she could, on the 23 months of pretrial incarceration alone, grant the prejudice prong to the defendant. Both of those are legal error. Judge McHugh? Yeah, let me on the second piece of that. We've got it set out as the purposes of the Speedy Trial Act. And as separate purposes, there's the prejudice to the defendant specifically on evidence in the case. But we also list as a factor excessive pretrial detainment as a separate factor, and I guess the anxiety that that causes. As I understand your argument, you're saying that none of the other reasons matter if you can't show specifically that there's been prejudice in your defense because of the delay that you lose on the prejudice prong. Am I correct in your argument? We are saying that correct, that those other two factors are basically pluses that you consider, but there has to be at least some hindrance to the defense. That's what I believe Judge Murphy said in the Tombs decision, said we're giving them the first two factors, but it doesn't matter that he spent 22 months pretrial incarceration. He has no prejudice here, and so he doesn't win factor four. Moreover, this court in black did the same thing with 23 months, which is the exact same amount of time here, if you assume he could have been released on federal detainer. And in Larson, it said 31 months was not enough, which is longer than the defendant would have spent time here. Oh, sorry, go ahead. No, no, you. Okay, turning now to the security footage, the actual prejudice to the defense. If the government knows that they are going to bring this action, but the defendant doesn't know because he hasn't yet been indicted, isn't it the government's responsibility to make sure that the evidence is not destroyed, the security footage? So the Supreme Court said in Arizona versus Youngblood that as long as there's not bad faith on the government's part, that there's not some broad obligation to just retain everything. And we have no reason to believe that the security footage missing here, it would have necessarily been relevant. What likely happened here is the government said, send us over the video you got on on this particular incident. And that other video had nothing to show about it. Arizona versus Youngblood says, if you're going to rely on just the government not preserving evidence, you have to have some bad faith. And that's never been alleged here. It's certainly in the speedy trial context. This court in Frias and Medina says there's a causation requirement that you have to if you're going to have the prejudice prong go to defense, based on the loss of evidence, that loss of evidence has to be caused by the speedy trial delay. And where evidence is has already been destroyed before the indictment has even been filed. It's not the speedy trial delay that has caused any evidence to be lost. And so it's certainly not prejudice of the speedy trial analysis. As I understand it, there was a that the tape was destroyed about 30 days after the incident. 36 days. 36 days. All right. And how many days after the incident was the federal indictment returned? It was about two months. So the event was July 3rd. 36 days after that sometime in August, it was destroyed. The indictment was near the end of September. Is there any evidence in the record when the U.S. Attorney's Office started investigating this? I don't believe there's evidence in the record that. Is there any evidence in the record of how the referral occurred to the U.S. Attorneys on the weapons issue? There is not. And I would also point out that on the fourth prong, our fourth factor, the burden is on the defense to show the prejudice. Even after they carry their burden on the first factor? Yes, the burden still remains with the defense after they carry it on the first factor. Carrying on the first factor simply means we look at the other three factors, but it's under this court's case law, it's still the defendant's burden on to show that the fourth factor is met. Now, you also argue on appeal that had the state released him pre-trial that the feds would have nabbed him. Correct? Yes. And did you raise that before the district court? I don't believe we did, your honor. Okay. Now, as I understand, did they actually put on evidence that his family was actually putting together a bond so that he could be released? They put assertions in a reply brief. Again, we didn't have a hearing on it, so no evidence of that nature was put on. Okay, so there's only argument in a brief, there's nothing in evidence on that? In a reply brief, and I think they may have attached an affidavit or declaration to that effect from the defendant. You never got a hearing to be able to challenge that? We did not, but again, we don't think a hearing is necessary given that even if we assume that's the case. You don't care about that issue? Well, we don't think it matters. We think we win regardless of whether he would have been released or not. Okay, one last, going to a different point. What were the motions that were filed in federal court by the defendant? They were continuances for more time to research various different issues. What were those issues? That's what I want to know. So to look at the discovery, typical things, one of them was to file the speedy trial motion. That was certainly in the first motion for continuance. We're not challenging whether those were meritorious motions to continue or not, but I think this court's decision in Beatty suggests those motions still count against him in terms of his assertion of the speedy trial, right? That if he wants to delay to do all this other extensive stuff, that's still not him pushing for his speedy trial. And moreover, the third factor still shouldn't go to him because he waited too long basically to assert his speedy trial right after it was right. I would like to- And on that, you're saying even if we look at it as eight months? Yes, because that's closer to the Nixon time period of a year where this court heavily weighed the third factor against the defendant. And I'd like to reserve the final 39 seconds. But the total amount that was delayed because of the motions was more than eight months, correct? Correct. The eight months is once his speedy trial right has already been delayed 22 or 23 months, and he's got everything he needs to file the motion, he then waits eight months to file that motion. And if I could reserve the 18 seconds. Thank you. Thank you. We're ready when you are. Thank you. May it please the court, counsel. My name is Shira Keevel. I'm an assistant federal public defender, and I represent the athlete Joshua Garcia. I'm going to start where this court was going for most of the argument, which is with the question of prejudice, which I think is the main issue in this appeal. This court should affirm because the district court's original ruling on prejudice was supported by the record that existed at the time. And the district court said nothing in its denial of the motion for reconsideration that rendered the prior dismissal erroneous. The original finding of prejudice was not clearly erroneous because it was based on a factual record, and it was supported by the factual record that existed. Mr. Garcia's proper was highly specific as to what evidence was lost and why. The government here has just kind of implied assuming that security footage was lost. But there is video footage from a lapel video body cam showing that security guards were looking at video that was not later produced to Mr. Garcia. So we know that there's security footage. The district court was not required to understand what you're saying. There is other video evidence that nobody's seen. So what I'm saying is that there is security footage that is missing. And the idea that maybe there is or maybe there isn't, that's not true. We know that there is because produced in discovery was body cam video, and that body cam video shows a snippet of a video that was not later produced. But you don't contend that that video, the security camera video, not the the body cam, you're not saying that it was not destroyed 36 days later? I don't think we know whether it was destroyed. All we know from the motion to reconsider is that it was set to be overwritten. And what that that's something special that this court has probably encountered with child pornography cases, where it's no longer being saved, it's no longer being intentionally retained. But that does not mean that it cannot later be found. If the Kmart hasn't gone out of business, and all of the video equipment is simply gone. But doesn't this these facts? Your Honor, what I think is really important is that the government did not present, they didn't proffer evidence in their response to the speedy trial motion, they said, hey, security footage is really it's quite often deleted. That's what they said. And they also said, did we put in a request to Kmart, we haven't heard back yet. But we know from the speedy trial motions that Mr. Garcia had been requesting this evidence for at least two months, because it was in his speedy trial motion that he was by he filed two months earlier. I don't know why the government didn't have an answer and didn't proffer facts, we wouldn't be allowed to come before a district court on a motion to reconsider, or come before this court on an appeal and say, hey, we had evidence. And we didn't really preview it in our motion or in our filings. But we really would have liked to present it at a hearing. We're not allowed to do that. So the question, I think the government really doesn't delve into what the motion to reconsider was. And I think it's crucially important in this appeal. The original motion, Mr. Garcia proffered thing, he explained the basis for the facts that he was asserting. And the government's response was, I don't think that that's true. What was your I mean, what what do you have showing that this evidence was destroyed and when it was destroyed? I mean, aren't you aren't you just sort of throwing out some speculation yourself? Did you did you proffer to the district court that this there was this security footage that we would have liked to have had from Kmart? And if the government would have acted diligently, we would have gotten it. And here's why we know we would have gotten it. And it was more than 36 days. I mean, do you know if it was 36 more than 36 days? I mean, what do you know about it that you put before the district court that would show you were prejudiced? So when the original motion, the evidence involved the defense investigation into the fact that the Kmart had closed, the timing of the Kmart closing presented newspaper articles specifically showing when the Kmart had closed, which was after the indictment had been filed. And again, this 36 days is very interesting, but it was only part of a motion to reconsider. And the only claim in the motion to reconsider was, dear judge, you clearly erred because you didn't hold a hearing. And what's really important here is the judge denied that motion to reconsider for three independent and equally sufficient reasons. Okay, let me let me stop you for a minute. Let me let me see what your theory was before this motion to reconsider happened. And that was, judge, we were prejudiced because we are showing you that Kmart closed after the indictment. Did you provide the judge with evidence via an investigator's affidavit or any type of evidence that at the time Kmart was closed or immediately before closing that the security footage you wanted still existed? Your Honor, I don't think that that is something that would have been possible to do. No, we didn't do that, because that was something the defense couldn't do. Why not? I mean, did you have an investigator? We had an investigator. Did your investigator have gone to Kmart and corporate and asked questions and found things out about this? I mean, because it sounds to me like you you criticize the government for for just throwing out some vague allegations, but sounds like yours weren't real specific either. Your Honor, we did not say what Kmart's policy was in terms of retention of video. But again, we wouldn't know even if their policy is we no longer retain after 36 days. It's impossible to know when the video is actually overwritten. It just isn't possible. And I think your Honor that there's two lines of cases, as the government has rightly pointed out, there's sort of the pre-indictment delay destruction of evidence line of cases, and there's the speedy trial cases. And the defense simply isn't held to the same burden in the speedy trial cases. You see that from Barker v. Wingo all the way running through the cases that we don't have to prove beyond a reasonable doubt exactly what happened. We have to show fair enough, but you have to you have to come forward with something that that's a little more concrete, don't you? So because what what I'm hearing here is that, well, if we don't know if it would have been overwritten 36 days later or not, even if that's the policy, I mean, how's anyone supposed to know that? How's the government supposed to ever rebut what you say? If the best they can do is say, look, Kmart told us this is after 36 days and they sent us away. And Your Honor, if the government had come in their opposition to this motion and said the policy of Kmart is to overwrite after 36 days, I think that there needed to have been a hearing. I think it's really important that this court remember the timing and sequence of this case. The government had delayed this case for two years. And by the of Colorado had just issued its first mask mandate. It had continued to indefinitely cancel trials. Holding a hearing was something that judges were only doing if it was absolutely necessary. And in this case, it was not absolutely necessary. But I think what's really important is when the government came back and said, here's our motion for reconsideration, you should have held a hearing. The number one reason that the district judge denied that motion is because the government did not cite a single case in support of that. They didn't say what the standard, the legal standard was to hold an evidentiary hearing. They didn't say why that had been violated. So that was the first reason that was no, no. But they pointed out a very important, perhaps the most important factor under Barker, and that is prejudice. And that was a very important thing. So I don't see why the district court didn't, you know, have a Zoom hearing. Or why the district court didn't say, you know, at least factually, we need to dig into this a little bit. You folks need to, you know, submit this in an evidentiary basis, whether it's by affidavit, declaration, what have you. Isn't that way things should have gone here? Do you mean after the motion to reconsider was filed or after the original motion? After the motion for reconsideration was filed. I think that that- After all, we're searching for the truth here. Correct, Your Honor. I don't think it would have been abuse of discretion to hold a hearing at that time. But neither was it an abuse of discretion to deny a hearing at that time. The government's evidence that they presented, they filed their motion to reconsider, I think it was July 24th. And the evidence that they presented, they said we would have shown this at the hearing was from July 23rd. They once again did not show any haste to deal with this case. And again, Your Honor, even if you disagree with that second reason that the district court denied the motion to reconsider, there's a third reason, independent reason that the district court denied it. And that was on the basis of the pretrial incarceration. And saying, you know what, in any event- Well, that doesn't make irrelevant. It makes it harmless. Absolutely. It just makes it harmless. It may mean that he gets, you know, one point on the prejudice thing, but it means also that the government was not given the opportunity to eliminate or dissipate the credit he got on the other prejudice from. And Your Honor- The third reason that the district court denied the motion to reconsider is it said, you know what, even if you're right, and there's no prejudice to the defense with the destruction of this video, even if you're right, there's still some prejudice because of this pretrial incarceration. And at that point, we still have every single Barker-Wingo factor weighing in favor of Mr. Garcia. And I know that the government- Where did this body cam? Who had the body camera? It was a police officer who appeared after the conclusion of the incident at Kmart. I don't remember which agency he was from. Oh, so the body cam was on a public official, a police officer, not their security guard. Correct, Your Honor. And it doesn't show anything about the incident? Correct. All it shows is it shows security guards who are viewing the previous security footage, and it shows a conversation where they're at, where the officer is asking about it. And it appears very clearly that the security officer is pointing to footage that was then never produced. And it was critically important footage because we're talking about a case where there's another motion that was filed by the defense. The government did not place this on a record, but you can see it on the docket and it's mentioned in many of the other motions that are on the record. A motion to dismiss two of the most serious charges, the robbery charge and the 924C saying this was not a robbery. This really is not much of a federal case. This was a shoplifting incident. And after the shoplifting incident was completed, there was violence in the attempt to escape. And that is the footage that was missing. We're talking about a truly important thing that was missing. But again, even if Your Honor doesn't accept this, doesn't accept that there's some difference between the denial of the motion where the government never said this was destroyed after 36 days and the denial of the motion to reconsider where they said, oh, you should have held a hearing. Here's some evidence from yesterday. There's still this third reason, and that has to do with the pretrial incarceration. Well, let me ask you about that. Under our decision in Tombs, can that standing alone be enough? Yes, Your Honor. I mean, I'm not sure I read that case that way. I think, Your Honor, that every case where this court has said, oh, this pretrial incarceration isn't enough is a case where the person was in federal custody during the specific case where there was delay. If you look at Seltzer, Seltzer specifically says, by maintaining a federal detainer rather than holding a detention hearing, the government assured that Mr. Seltzer would remain in jail until the federal prosecution commenced. This type of prolonged pretrial incarceration is a well-established type of prejudice that a defendant may rely upon in making an incredibly aggressive assertion. They're saying you always have to have prejudice to the defense, and it's very clear that that's not true. If that were true, I think that sometime in the last 50 years, the U.S. Supreme Court or this court would have said that, and that's never been said. If I may address some of the things the government said at the beginning. Before you go, on complexity, do you agree that the only evidence is the complaint filed in the state court, the criminal complaint? I believe so, and my understanding of the complaint that was filed is that it was really just a list of the charges. I don't remember there being a description of what happened. So that's all the district court had in ruling on complexity? I believe so, and then there was a mention of, so you asked earlier, your honor, about whether the plea agreement had been provided. The plea agreement was not provided, but a description of the facts that it had ended in. Here's my question. So the facts are undisputed as to the underlying facts on the complexity. Doesn't that make the determination of complexity a question of law? The facts are and then you go on. Does that complaint as a matter of law indicate that it's complex? I don't think, your honor, that that is the question to be asking, because I think the question the government tries to say, they literally said there are three sub-factors. If they're present, that's sufficient for us to defer. That is not the law of the circuit. That is absolutely not the law of the circuit. In Seltzer, this court says that the government is required to show why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue. The government has never done that. They've asserted that there's overlap. They've asserted that there's complexity, but the real factual question for the district court was whether the government had shown that they had to defer, and they absolutely didn't. None of the things that the government mentioned have anything to do with serial prosecution versus simultaneous prosecution. There's absolutely no that even the general concept of comedy is irrelevant, and that's not so. I agree that it's not irrelevant, but there's a very good description in Seltzer of a circuit split, three-way circuit split, where there's at least one circuit that says, never may you defer. There's several circuits that say, usually you can defer, and then this court sat itself in the show that it's necessary in your case. The government did not do that here. They keep referring to Nixon. That was, again, something that applied clear air. There just is not a situation where a district court has said, this is not complex. There's nothing that means that the government couldn't have worked a little bit harder and made this work, where this court has overruled that decision. This court simply hasn't done that. The government is relying on cases that were clear error review of government wins to argue that in this clear error review of a defense win, this court is somehow legally compelled to say that the district court abused its discretion in making this finding, and it simply isn't. In Nixon, the district court didn't, excuse me, this court did not say, murder cases are inherently complex, you always defer. They said, we understand that murder cases are generally inherently complex, and in this situation, we are deferring to the decision of the district court based on the facts of this murder case, that this murder case was complex, and that that was a reason to defer prosecution. The government repeatedly is not correctly, and is not giving this court the correct flag posts to be able to follow this court, for this court to follow to the correct decision. And would I think unless there's questions from the bench, I think you need to sum up because you're over time. Absolutely. Your Honor, again, I think that the real issue with the government's appeal is that they don't separate the original denial of the motion to dismiss from the denial of the motion to reconsider, which was simply a motion to say you should have held a hearing. And finally, if this court decides not to affirm, I would request that you do remand for an evidentiary hearing. Thank you. Mr. Crewell, we're going to give you three and a half minutes because that is how far we let the defendant go over. And let us just set the clock. We're not quite there yet. All right, we're ready to proceed. Thank you. Thank you, Your Honor. As a first matter, I just encourage, I trust the court will read the cases and determine whether we've the law correctly. I think you'll find that we have. On Seltzer, there was also a hindrance to the defense prejudice in that case. In our reply brief, we talk about the numerous other forms of prejudice in Seltzer. And so it was not just the pretrial incarceration, as it is here, if you take out the video prejudice. On the video prejudice, if you look at her reconsideration motion, the judge here assumed the facts were, as we said, that the video had been overwritten after 36 days. And she said that still didn't matter because it was our fault that the video wasn't there. As far as whether we should have had this 36 days ready long beforehand, we didn't know it was relevant until they filed their motion to dismiss on speedy trial grounds. It's only when they say, hey, this video evidence is lost and therefore we're prejudiced, that that becomes relevant. And we note in our response, we've reached out to Kmart. We haven't heard back yet, but we did ask for a hearing and we were assuming if we get a hearing, we're going to present that. We finally had it in time for our motion for reconsideration. We get present that facts at no point in their reply brief below to our response. Or at this point on appeal, have they given any indication that that video would have still been in existence prior to the indictment? And you don't have to have certainty. You can, the fact that we have a, that there's a policy that this is going to be overwritten is enough to suggest that this was in fact overwritten. It's their burden to show that's not the case somehow. Was the initial briefing on the motion in the federal district court, was that completed in July of 2020? Uh, I believe, I believe that's when the order came down and we filed a reconsideration motion. I believe it was a little bit before that. Okay. And, and the reconsideration order was September, I believe, correct? Uh, I think that's right. Yeah. And I'm sorry, reconsideration. Yes. The reconsideration order was July of 2020. Yes. Were Zoom hearings, uh, being conducted in the federal district court in Colorado at that time? I believe we were doing video conferences and occasionally doing video sentencings if the defendant would, would, uh, was willing to waive for a sentencing of that sort. Um, I don't think we're doing a whole lot of trials at that point, but there were hearings. And then I, I would point out if council really feels that there are other motions that should opposing council always has the ability to supplement the record if they'd like to do so. And this may be a shoplifting incident, but it's a shoplifting incident where the guy then threatened employees at the Kmart and fired a gun in their presence. And I think that's a very different circumstance and warranted bringing federal charges here. Besides the fact that he is a felon who has felon status in possession of a firearm, we bring those cases in federal court. It was an appropriate prosecution. What, what, what do you, what, what, what would you contemplate would happen if, if, uh, there was a remand for further hearing? I would contemplate that there'd be nothing different on the video. There may be findings that yes, indeed, he would have been released on bond. Maybe there wouldn't be, but again, that wouldn't change anything. There may be a finding that there weren't logistical difficulties or that there were, but again, that wouldn't change anything given the prejudice prong, given the third factor and given the overlap in the cases. And we would ask this court to reverse the district court's order, reinstate the indictment and hold that no speed trial violations occurred. Thank you. Thank you. We will take this matter under advisement.